UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| B. D., a minor, by and through his guardian | ) | |
| ad litem, BRYAN MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00107-JRS-DLP |
| | ) | |
| SAMSUNG SDI CO., LTD., | ) | |
| | ) | |
| Defendant. | ) | |

**Order on Motion to Dismiss**

## I.    Introduction

Plaintiff B. D., a minor, sues Samsung SDI Co., Ltd. for injuries he sustained when a Samsung lithium battery caught fire.  Samsung moved to dismiss for lack of personal jurisdiction, and the matter has been stayed pending the Court's ruling.

Now before the Court is Samsung's Motion to Dismiss, (ECF No. 8).

## II.    Background

Samsung makes batteries.  At issue here is one of Samsung's[1] 18650 rechargeable lithium batteries.  (The 18650 battery is a small cylinder, somewhat larger than the familiar AA battery and storing considerably more energy. *See* Lithium-Ion Batteries (Rechargeable),      WIKIPEDIA,      https://en.wikipedia.org/wiki/List-of-battery-sizes#Lithium-ion_batteries_(rechargeable).)  D. alleges that an 18650 battery, which

---

[1] Samsung is willing to assume for the purposes of this motion that the battery in question was, in fact, a Samsung battery.  (D. Br. Supp. 1 n.1, ECF No. 9.)  The Court acknowledges Samsung's reservation of its right to contest that fact later, if necessary.

he used to power an e-cigarette, caught fire in his pocket and burned him.  (Pl. Compl. 1, ECF No. 1-1.)

Samsung claims not to sell 18650 batteries directly to consumers.  (D. Br. Supp. Mot. Dismiss 7, ECF No. 9.)  Rather, Samsung sells 18650 batteries as "components" to approved manufacturers, who assemble the individual batteries into larger battery packs.  (*Id.*)  Samsung asserts that none of its approved manufacturers is in Indiana and that, accordingly, it neither sells nor ships 18650 batteries to the state.  (*Id.*) Nonetheless, 18650 batteries do end up in Indiana: consumers can buy them piecemeal from various online retailers, (Pl. Resp. 6, ECF No. 16), and the approved manufacturers' battery packs containing 18650 batteries are sold to consumers in cordless power tools, scooters, and the like, (*id.* at 6–7).

## III.   Legal Standard

Samsung brings its motion to dismiss under Rule 12(b)(2) for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).  At this stage, the Court will "take the plaintiff's asserted facts as true and resolve any factual disputes in its favor."  *NBA Properties, Inc. v. HANWJH*, No. 21-2909, 2022 WL 3367823, at *3 (7th Cir. Aug. 16, 2022) (quoting *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010)). However, "the plaintiff bears the burden of demonstrating the existence of jurisdiction."  *Id.*  (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).  The Court "may consider affidavits on the issue of personal jurisdiction; both parties' affidavits are accepted as true, and where they conflict, the

plaintiff is entitled to resolution in its favor."  *Id.*  (citing *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 393 (7th Cir. 2020)).

## IV.   Discussion

The only issue here is specific personal jurisdiction.  (Pl. Response 1, ECF No. 16; D. Reply 1, ECF No. 23.)

Because this case comes before the court under 28 U.S.C. § 1332(a), the diversity jurisdiction statute, Indiana law applies to the personal jurisdiction analysis.  Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  But "[b]ecause Indiana extends personal jurisdiction to any basis 'consistent with the Federal Due Process Clause,' the sole issue is 'whether the exercise of jurisdiction comports with the limits imposed by federal due process.'"  *Patterson v. Chiappa Firearms, USA, Ltd.*, No. 1:20-CV-01430-JPH-MG, 2021 WL 4287431, at *1 (S.D. Ind. Sept. 21, 2021) (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014); Ind. Trial Rule 4.4(A)).

The due process of specific personal jurisdiction has taken a long and winding road, s*ee Curry*, 949 F.3d at 393–97, which the Court need not rehearse here, c*f. NBA Properties*, 2022 WL 3367823 at *4 (citing the *Curry* exposition and noting "[w]e . . . need not walk every step of that road again").  The Seventh Circuit gives a three-part test:

> First, the defendant's contacts with the forum state must show that it purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state. Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal

jurisdiction must comport with traditional notions of fair play and substantial justice.

*Id.* at *6 (quoting *Curry*, 949 F.3d at 398).  That three-part test is designed to answer the underlying due process problem:

> The ultimate constitutional standard for the exercise of specific jurisdiction has been the same since the Supreme Court first abandoned strict territorial jurisdiction: is it fair and reasonable to call the defendant into the state's courts to answer the plaintiff's claim?

*uBID*, 623 F.3d at 426 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A.  Minimum Contacts

The first prong of the specific jurisdiction test "look[s] to see if there are 'minimum contacts' between the defendant and the forum State."  *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878–79 (7th Cir. 2019) (citing *World-Wide Volkswagen*, 444 U.S. at 291; *Int'l Shoe*, 326 U.S. at 316).  This is a "broad standard" and "the contacts supporting specific jurisdiction can take many different forms."  *uBID*, 623 F.3d at 426.  "The essential point of the inquiry is to 'ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts' with the forum state."  *Curry*, 949 F.3d at 398 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)).

One way to establish minimum contacts is to use the "stream of commerce" theory: "the forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of

4

commerce with the expectation that they will be purchased by consumers in the forum State." *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946 (7th Cir. 1992) (quoting *World–Wide Volkswagen*, 444 U.S. at 297–98.)   The stream of commerce theory remains viable in the Seventh Circuit.   *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 575–76 (7th Cir. 2020) (citing *Dehmlow*, 963 F.2d at 946–47; *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 & n.2 (7th Cir. 2004)) ("[O]ur circuit is among those that apply the stream of commerce theory in products liability cases. In the absence of intervening guidance from the Supreme Court, we have reasoned that the Court adopted the stream of commerce theory in *World-Wide Volkswagen* and has not overruled it since.").

The stream of commerce theory applies squarely to cases in which a company doing nation-wide business is sued in some part of its national market for its product's defects.  In *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), the Supreme Court found specific jurisdiction over Ford was proper in Montana and Minnesota for car crashes that occurred there, even though the cars were manufactured in New York.  141 S. Ct. at 1027 ("[T]his Court has stated that specific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum State and the product malfunctions there.").  The Supreme Court compared the case to *World-Wide Volkswagen*, in which the New York local car dealer escaped suit in Oklahoma for a car crash there, but the international manufacturer and the national distributor were still within Oklahoma

jurisdiction. *Id.* (citing *World-Wide Volkswagen*, 444 U.S., at 295).  The Supreme Court reasoned,

> if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York. For, the [*World-Wide Volkswagen*] Court explained, a company thus 'purposefully avail[ing] itself' of the Oklahoma auto market 'has clear notice' of its exposure in that State to suits arising from local accidents involving its cars.

*Id.* at 1027 (citing *World-Wide Volkswagen*, 444 U.S. at 297).  The Supreme Court found the governing rule to be "when a corporation has 'continuously and deliberately exploited [a State's] market, it must reasonably anticipate being haled into [that State's] court[s]' to defend actions 'based on' products causing injury there."  *Id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984) and citing *Burger King*, 471 U.S., at 472–473; *Goodyear*, 564 U.S., at 927; *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 110 (1987) (opinion of O'Connor, J.)).  The Seventh Circuit has faithfully applied that rule.  *See, e.g.*, *uBID*, 623 F.3d at 427 ("GoDaddy has thoroughly, deliberately, and successfully exploited the Illinois market. . . . This is a company that, like the national magazine in *Keeton*, has conducted extensive national advertising and made significant national sales"); *Curry*, 949 F.3d at 399–400 (7th Cir. 2020) (citing *Keeton*, 465 U.S. at 781) ("There is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum.").

Here, too, is a case in which a nation-wide business is sued for a local accident involving its product.  B.D. has alleged that Samsung sells tens of millions of 18650 batteries each year.  (Pl. Response 4, ECF No. 16.)  B.D. also alleges that some of these millions are readily available in Indiana, both as standalone batteries and in battery packs.  (*Id.* at 5.)  B.D. claims that the battery in question was purchased at retail in Indiana.  (*Id.* at 2.)  Together, those alleged facts fit neatly within the precedents established by *Ford*, *Keeton,* and *World-Wide Volkswagen*.  The alleged facts show a "continuous[] and deliberate[] exploitation" of the Indiana market, *Ford*, 141 S. Ct. at 1027 (quoting *Keeton*, 465 U.S. at 781); and that Samsung has "purposefully availed itself of the privilege of conducting business" in Indiana," *NBA Properties*, 2022 WL 3367823 at *6.

Samsung does not deny B.D.'s factual allegations; instead, it asserts that it "has no ability to know" where its batteries end up downstream of its out-of-state business-to-business sales and that, in any case, B.D. was misusing the battery in question. (D. Br. Supp. 7, ECF No. 9.)  But neither of Samsung's objections goes to the heart of the matter.

First, regardless of how Samsung structures its business, its batteries do get to Indiana—and not occasionally or at random, but on a large scale.  *See Keeton*, 465 U.S. at 774 (1984) ("[R]egular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous.").  The place of first sale is irrelevant—indeed, the stream of commerce theory exists to reach upstream manufacturers that do not themselves appear in the forum.  *World-Wide*

*Volkswagen*, 444 U.S. at 297 (holding that personal jurisdiction is appropriate where it arises from "the efforts of the manufacturer or distributor to serve directly *or indirectly* the market for its product in other States") (emphasis added); *Ford Motor Co.*, 209 L. Ed. 2d 225, 141 S. Ct. at 1028 (citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014)) ("As in *World-Wide Volkswagen*, the [*Daimler*] Court did not limit jurisdiction to where the car was designed, manufactured, or first sold."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State.").  Furthermore, Samsung must know that its batteries are ubiquitous in the United States, including Indiana: this is not a case of a boy flying back home from Seoul with a souvenir e-cigarette he got from a mom-and-pop sidewalk vendor; this is a case of a multinational business that directly and indirectly sells as many batteries to the United States as it can.  *See Curry*, 949 F.3d at 400 ("In *Keeton*, . . . [t]he Court determined that, with a nationwide market, the publisher reasonably should have anticipated that it could be held accountable in the forum state for activities arising from the 'substantial number' of sales in the forum state."); *Ford Motor Co.*, 141 S. Ct. 1017, 1039 (2021) (Gorsuch, J., concurring) ("No one seriously questions that the company, seeking to do business, entered th[e] jurisdiction[] through the front door. And I cannot see why, when faced with the process server, it should be allowed to escape out the back.").

Second, B.D.'s misuse of the battery is logically posterior to Samsung's contacts with Indiana.  If Samsung is serving, albeit indirectly, the Indiana market, it has

established the minimum contacts that make it amenable to suit, regardless of whether the behavior that eventually gives rise to suit is at all reasonable or foreseeable.  Samsung asserts the relevant market is not "Indiana" but "e-cigarettes." (D. Reply 4, ECF No. 23.)  In that case, Samsung argues, it has no minimum contacts with the forum, because, far from purposefully availing itself of the e-cigarette market, it strives to prohibit the use of its product there.  (*Id.*)  The Court is not persuaded: specific personal jurisdiction comes out of a tradition requiring presence, real or effective, in the forum, *see Curry*, 949 F.3d at 394–95 (discussing the history of territorial jurisdiction preceding *International Shoe*); the word "market" still refers to geographic areas, not to specific product uses, *see, e.g.*, *Ford*, 141 S. Ct. at 1027 (referring to "a State's market").  B.D. has alleged that Samsung's 18650 batteries are readily available for purchase in Indiana, both free standing and in packs.

     B.  Nexus

The second requirement is "the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities."  *NBA Properties* at *6 (quoting *Curry*, 949 F.3d at 398).  Product liability suits are the paradigm example establishing this injury-forum activity nexus:

> Specific jurisdiction requires not only that a defendant establish minimum contacts with the forum state, but also that the litigation arise out of those contacts. . . . In a products liability suit, the underlying litigation alleges the development of a product that harms consumers. Thus, when a defendant takes steps to reach consumers in a forum state, it has created a relationship with the forum state that has special relevance to the litigation at issue. The stream of commerce theory contemplates that a defendant's product may go through middlemen before reaching consumers, but the point of consumer sale remains

relevant to the relationship between the defendant, the forum, and the consumer-injury litigation.

*J.S.T. Corp.*, 965 F.3d at 576 (citing *Lexington Ins. Co.*, 938 F.3d at 878.)   Here, Samsung's contact with Indiana is its availment, through the stream of commerce, of Indiana's 18650 battery market.   B.D.'s suit arises from an allegedly defective battery he bought in Indiana.   The Court finds that nexus requirement is satisfied.

> C.   Fair Play

Lastly, the Court must ensure that the exercise of specific personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Curry*, 949 F.3d at 402 (quoting *Int'l Shoe*, 326 U.S. at 316).   The Court considers

> The burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (quoting *Purdue Research*, 338 F.3d at 781).   Where the plaintiff has "made a threshold showing of minimum contacts, that showing is generally defeated only where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

Here, the Court finds that the burden on the defendant is not unreasonable: Samsung is a multinational corporation with American subsidiaries; it routinely defends products liability suits in the country.   (Pl. Response 4, ECF No. 16.)   Indiana has a strong interest in adjudicating the suit: B.D. is an Indiana citizen, injured in

Indiana, by an allegedly defective battery bought in Indiana.  (*Id.* at 2–3.)  *Cf. Ford*, 141 S. Ct. at 1032 (Alito, J., concurring) ("In entertaining these suits, Minnesota and Montana courts have not reached out and grabbed suits in which they have little legitimate interest. . . . *Their* residents, while riding in vehicles purchased within *their* borders, were killed or injured in accidents on *their* roads. Can anyone seriously argue that requiring Ford to litigate these cases in Minnesota and Montana would be fundamentally unfair?").  B.D., a minor individual, can best pursue relief here, in Indiana.  (Pl. Response 2, ECF No. 16.)  And interstate concerns are not implicated here, where the injury is local, and the defendant is a foreign corporation; no other U.S. state has an interest in this litigation.

Samsung argues personal jurisdiction is unfair here because it does not control the downstream transactions that brought the battery in question into Indiana.  (D. Br. Supp. 9, ECF No. 9.)  That argument is, in effect, a rejection of the stream of commerce theory.  As discussed above, the stream of commerce theory is good law; what is more, the Court believes the theory to comport with "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.  People are responsible for their actions; corporations are too.  And responsibility for action does not end at a national border.  Here, Samsung sells millions of batteries from its home in Korea because millions of people, in Indiana and around the world, are willing to buy them. And while Samsung sells to businesses, not to consumers, the consumer market drives the demand for its product and enables its profits.  It is therefore fair to hold Samsung responsible under the laws of the states where its effects are felt; it would

be unfair to let Samsung escape the effects of its conduct simply because those effects are felt beyond its home nation. *See NBA Properties*, 2022 WL 3367823 at *9 (quoting *Curry*, 939 F.3d at 402) ("There is no unfairness in requiring a defendant to defend a lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much."); *Ford*, 141 S. Ct. at 1037 (Gorsuch, J., concurring) (explaining the early-twentieth-century erosion of territorial jurisdiction over corporations) ("Corporations wanted to retain the privilege of sending their personnel and products to other jurisdictions where they lacked a charter to do business. At the same time, when confronted with lawsuits in the second forum, they sought to hide behind their foreign charters and deny their presence. Really, their strategy was to do business without being seen to do business.")

Here the Court finds personal jurisdiction fair.

## V.    Conclusion

The polestar of personal jurisdiction is *International Shoe*, which asks the Court to assess jurisdiction based on "traditional notions of fair play and substantial justice." *Ford*, 141 S. Ct at 1024. The Court has applied the three-prong test developed by the Seventh Circuit to answer that question, *NBA Properties*, 2022 WL 3367823 at *6, and finds that specific personal jurisdiction over Samsung is appropriate here.

Accordingly, Samsung's Motion to Dismiss, (ECF No. 8), is **denied.**

The stay imposed by Order of Magistrate Judge Pryor, (ECF No. 14), is **lifted.**

**SO ORDERED.**

Date: 09/30/2022

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution by CM/ECF to registered counsel of record.